# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:20-cv-00226-MR

| | |
|---|---|
| **DOMINIC STROUD,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| **SAINT T. TAPP, et al.,** ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Defendants Saint T. Tapp and Christopher Stidham's Motion for Summary Judgment [Doc. 42].

## I. BACKGROUND

The incarcerated Plaintiff Dominic Stroud[1] proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983. The unverified Complaint [Doc. 1] and Amended Complaint [Doc. 10] passed initial review on a claim that the Defendants used excessive force against him. [Docs. 9, 14]. The Plaintiff appears to seek injunctive relief and compensatory and punitive damages. [Doc. 10 at 5].

---

[1] The Plaintiff is serving a sentence of between 6 years and 8 years, 3 months for two counts of robbery with a dangerous weapon (principal, conspiracy). [Doc. 44-4: MSJ Ex at 1-2].

Defendants Tapp and Stidham filed the instant Motion for Summary Judgment and supporting materials. [Doc. 42: MSJ; Doc. 44: MSJ Ex; Doc. 45: Video Recordings]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 47: Roseboro Order]. The Plaintiff filed a Letter opposing summary judgment that is construed as his Response to the Defendants' Motion.[2] [Doc. 51: MSJ Response]. The Defendants did not reply, and the time to do so has expired. Having been fully briefed, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the Court "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Instead, it "must consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from

---

[2] The Plaintiff also filed a Letter in which he appeared to seek leave to engage in further discovery, which was denied. [Docs. 48, 50].

2

the facts in the non-movant's favor." Matvia v. Bald Head Island Mgt., Inc., 259 F.3d 261, 266 (4th Cir. 2001).

"[T]here is no burden upon 'the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact.' Rather, 'the burden on the moving party may be discharged by "showing" – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" Carr v. Deeds, 453 F.3d 593, 608 (4th Cir. 2006) *abrogated on other grounds by* Wilkins v. Gaddy, 559 U.S. 34 (2010) (per curiam) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)) (internal emphasis omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 322 n.3 (quoting Fed. R. Civ. Proc. 56(c)). The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present

sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. FACTUAL BACKGROUND

As noted, the Plaintiff has not submitted his own forecast of evidence in opposition to Defendants' summary judgment motion. Regardless, the forecast of evidence in the light most favorable to the Plaintiff shows the following.

On July 16, 2019 at approximately 2:50 p.m., Unit Manager Tapp and Officers Stidham and Truax[3] had a discussion with the Plaintiff about photographs that had been confiscated from him during a cell search. [Doc. 44-2: Tapp Decl at ¶¶ 2, 6-8; Doc. 44-6: Stidham Decl at ¶ 6]. The Plaintiff became argumentative and started yelling and cursing at Tapp, so Tapp ended the conversation. [Doc. 44-2: Tapp Decl at ¶ 9; Doc. 44-6: Stidham Decl at ¶ 7]. Officer Truax then ordered the Plaintiff to lock down in his cell.

---

[3] Officer Chris Truax is not presently a Defendant in this action.

4

[Doc. 44-2: Tapp Decl at ¶ 10 Doc. 44-6: Stidham Decl at ¶ 8]. The Plaintiff replied that he was not going to lock down until his photographs were returned. [Doc. 44-2: Tapp Decl at ¶ 11; Doc. 44-6: Stidham Decl at ¶ 9]. Officers Truax and Stidham repeatedly ordered the Plaintiff to lock down, but the Plaintiff continued to refuse and remained "argumentative and threatening." [Doc. 44-2: Tapp Decl at ¶ 12; Doc. 44-6: Stidham Decl at ¶ 10]. Pursuant to Marion CI's Standard Operating Procedures ("SOP"), Officer Stidham administered pepper spray to the Plaintiff's face following the Plaintiff's "defiance, threats, and refusal to obey orders." [Doc. 44-2: Tapp Decl at ¶ 13; Doc. 44-6: Stidham Decl at ¶¶ 11-12].

Immediately after Officer Stidham administered the pepper spray, the Plaintiff rushed toward Truax, Stidham, and Tapp, and "began throwing punches at [them] with closed fists, and took all of [the officers] to the floor." [Doc. 44-2: Tapp Decl at ¶ 14; Doc. 44-6: Stidham Decl at ¶¶ 13-14]. The Plaintiff landed on top of Stidham and continued striking him with punches to the head, neck, and upper body. [Doc. 44-2: Tapp Decl at ¶¶ 15-16; Doc. 44-6: Stidham Decl at ¶¶ 13-15]. The Plaintiff continued to strike Officer Stidham in the head with a closed fist despite oral orders from Tapp and Truax to stop. [Doc. 44-2: Tapp Decl at ¶ 17; Doc. 44-6: Stidham Decl at ¶ 15]. Unit Manager Tapp was unable to stop the attack and believed that the

5

Plaintiff was "trying to kill" Stidham, so Tapp got off of the Plaintiff, yelled "taser, taser, taser," and deployed his conducted energy weapon ("CEW") in an effort to gain the Plaintiff's compliance and save Stidham. [Doc. 44-2: Tapp Decl at ¶¶ 18-21].

The CEW slowed the Plaintiff's attack so that Officer Stidham was able to get out from under the Plaintiff, who continued struggling and refused to give officers his hands so he could be placed in mechanical wrist restraints. [Doc. 44-2: Tapp Decl at ¶¶ 22-23; Doc. 44-6: Stidham Decl at ¶¶ 16-17]. The Plaintiff began making sounds with his throat that indicated he was going to try to spit on Officers Truax and Stidham, and he attempted to bite them while they were trying to restrain him. [Doc. 44-6: Stidham Decl at ¶¶ 18-19]. Upon hearing that the Plaintiff was trying to bite and spit, Tapp gave another short burst of the CEW to gain the Plaintiff's compliance. [Doc. 44-2: Tapp Decl at ¶¶ 24-25]. Unit Manager Tapp's use of the CEW was appropriate under the SOP because it was used to control or deter a violent, threatening, or aggressive offender, and to defend officers from assault. [Doc. 44-2: Tapp Decl at ¶ 26].

After the additional burst of CEW, Officers Stidham and Truax were able to place the Plaintiff's wrists in mechanical restraints. [Doc. 44-2: Tapp Decl at ¶ 27]. The Plaintiff was escorted to restrictive housing by other

6

officers for decontamination. [Doc. 44-2: Tapp Decl at ¶ 28; Doc. 44-6: Stidham Decl at ¶ 21]. Officer Stidham was examined by medical and was taken to an outside hospital for treatment. [Doc. 44-6: Stidham Decl at ¶ 22].

Unit Manager Tapp's use of CEW "was meant solely to regain control of the situation and was not meant to injure or otherwise harm Plaintiff." [Doc. 44-2: Tapp Decl at ¶ 30]. Unit Manager Tapp was required to use CEW due to Plaintiff's "failure to obey orders to stop Officer Stidham and then to stop biting and submit to restraints;" Tapp used the CEW in a good faith effort to restore discipline and order. [Doc. 44-2: Tapp Decl at ¶ 30]. He did not use the CEW with the intent to be cruel or evil. [Doc. 44-2: Tapp Decl at ¶ 31].

Officer Stidham did not use any force on the Plaintiff after he was placed in wrist restraints. [Doc. 44-6: Stidham Decl at ¶ 23]. The use of pepper spray was meant only to regain control of the situation and was not meant to injure or otherwise harm him. [Doc. 44-6: Stidham Decl at ¶ 24]. The Plaintiff's failure to obey orders to lock down required that Stidham use pepper spray, and he did so in a good faith effort to restore discipline and order. [Doc. 44-6: Stidham Decl at ¶ 24]. Officer Stidham's intentions in using pepper spray was not to be cruel or evil. [Doc. 44-6: Stidham Decl at ¶ 25].

7

The Plaintiff received infractions on July 16, 2019 for disobeying an order, profane language, and "assault staff w/ weapon." [Doc. 44-4: MSJ Ex at 6]. His infraction history includes several other incidents of disobeying orders, as well as one prior infraction for being an active rioter. [Id.].

The Defendants have submitted video files containing footage from the prison dayroom [Ex. C129] and the adjoining hallway [Ex. C126] that show the following events:

| | |
|---|---|
| 2:49:46 | Stidham stands in the hallway, facing the doorway to the dayroom, next to Truax [Ex. C126] |
| 2:49:49 | Truax and Tapp, who is just inside the dayroom, speak to the Plaintiff who is standing farther inside the dayroom; Truax points into the housing unit [Ex. C129] |
| 2:49:51 | Plaintiff speaks and Truax points into the housing unit again [Ex. C129] |
| 2:49:54 | Plaintiff continues speaking and Truax points into the housing unit a third time [Ex. C129] |
| 2:49:58 | Plaintiff continues speaking; Stidham raises his arm through the doorway and sprays Plaintiff's face with OC spray [Exs. C126, C129] |

| | |
|---|---|
| 2:49:59 | Plaintiff holds up a hand to block the spray, then runs towards Stidham and Truax, swinging his arm [Exs. C126, C129] |
| 2:50:00 | Tapp grabs Plaintiff's shoulder and neck as Plaintiff continues through the door into the hallway, swinging his arms at Truax and Stidham who retreat; the Plaintiff and all three officers fall to the hallway floor [Exs. C126, C129] |
| 2:50:01 | Plaintiff lands on top of Stidham, with Tapp on top of Plaintiff, and Truax next to them [Ex. C126] |
| 2:50:03 | Plaintiff grabs Stidham and repeatedly punches his face and head; Tapp tries to restrain Plaintiff's arm; Truax attempts to control Plaintiff's legs [Ex. C126] |
| 2:50:05 | Tapp aims his taser at Plaintiff's back as Plaintiff continues punching Stidham [Ex. C126] |
| 2:50:08 | Tapp deploys the taser into Plaintiff's back; Plaintiff stills [Ex. C126] |
| 2:50:12 | Stidham moves out from underneath Plaintiff, who is face-down on the floor; Truax and Stidham bring Plaintiff's arms behind his back [Ex. C126] |

| | |
|---|---|
| 2:50:17 | Truax kneels over Plaintiff's legs and Stidham kneels next to Plaintiff as they attempt to secure Plaintiff's hands [Ex. C126] |
| 2:50:25 | Additional officers begin to arrive [Ex. C126] |
| 2:50:27 | Plaintiff appears to struggle as Stidham and Truax continue attempting to restrain Plaintiff's hands [Ex. C126] |
| 2:51:04 | Stidham stands and is replaced by another officer [Ex. C126] |
| 2:52:32 | Taser prongs are removed from Plaintiff's back by another individual [Ex. C126] |
| 2:52:47 | Plaintiff is brought to his feet and escorted away by other officers [Ex. C126] |

## IV. DISCUSSION

### A. Excessive Force

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. Const. Amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component (that the harm inflicted was sufficiently serious) and a subjective component (that the prison official acted with a

10

Case 1:20-cv-00226-MR   Document 52   Filed 09/07/22   Page 10 of 15

sufficiently culpable state of mind). Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21.

The Plaintiff claims that Defendant Stidham sprayed him with pepper spray as the Plaintiff was turning to return to his cell, even though Defendant Tapp had told him to "stand down." [Doc. 10-1 at 1; see Doc. 10 at 5]. The Plaintiff claims that he was "blinded and disoriented" by the OC spray and feared "retaliation & life threatening assaults" by staff, so he began "swing[ing] wildly" at Stidham and Truax in "self defense." [Doc. 10-1 at 1]. The Plaintiff claims that, after the Plaintiff and all three officers went to the floor, Tapp tased the Plaintiff, who "immediately" submitted to cuffs and foot restraints. [Id.]. The Plaintiff further claims that, while he was face-down in full restraints, either Stidham or Truax said "you won't hit me boy," grabbed a handful of the Plaintiff's hair, and banged the Plaintiff's face repeatedly on the concrete floor. [Id.]. He claims that Tapp then tased the Plaintiff again; a boot stomped the back of his head; and the taser barbs were "snatched"
11

out of his body. [Id.]. He claims that Stidham, Tapp, and Truax then "drag[ged] the Plaintiff to the segregation unit. [Id.]. However, as previously discussed, the Plaintiff's Complaint, Amended Complaint, and summary judgment Response are unverified, and the Plaintiff has not forecast any evidence in support of his claims.

The forecast of evidence demonstrates that no excessive force was used during the incident. The Defendants have submitted video footage and declarations that demonstrate that the Plaintiff was not innocently headed to his cell when the incident occurred. Rather, he was standing in the dayroom, continuing to argue with the officers, and ignoring repeated directives to go to his cell when Defendant Stidham sprayed him with pepper spray. The spray was brief and objectively reasonable to obtain the Plaintiff's compliance with repeated verbal orders. The video footage shows that the Plaintiff then attacked the officers by charging them and striking them, tackling them to the ground, and continuing to repeatedly punch Stidham's head and face with a closed fist until Defendant Tapp deployed his taser. The Plaintiff's claims that an officer grabbed him by the hair, banged his face into the floor, stomped the back of his head, snatched the taser barbs out of his back, and that Truax, Tapp and Stidham escorted him to restrictive housing, are refuted by the video footage and by Tapp's and Stidham's

12

declarations. The forecast of evidence also demonstrates that no force was used beyond that which was reasonably necessary to gain the Plaintiff's compliance and end his violent attack. The Plaintiff's unsupported allegations that the Defendants (or any other officers) used excessive force during this incident are "so utterly discredited by the record that no reasonable jury could have believed him." Scott v. Harris, 550 U.S. 372, 380 (2007).

The Court concludes, after carefully reviewing the Plaintiff's allegations and the forecast of evidence, that his excessive force claim is frivolous and malicious. See 28 U.S.C. §§ 1915(e)(2)(B)(i), 1915A(b)(1).

### B. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government

13

officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Because the Plaintiff has not presented a forecast of evidence that Defendants Tapp and Stidham violated a constitutional right, the Court grants them summary judgment on this ground as well.

## IV. CONCLUSION

For the reasons stated herein, the Court grants Defendants' Motion for Summary Judgment. The Court finds that the Plaintiff's excessive force claim is frivolous and malicious.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment [Doc. 42] is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

2. The Court finds that the Plaintiff's claim is frivolous and malicious pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A.

The Clerk is respectfully directed to terminate this action.

14

Case 1:20-cv-00226-MR    Document 52    Filed 09/07/22    Page 14 of 15

**IT IS SO ORDERED.**

Signed: September 7, 2022

Martin Reidinger
Chief United States District Judge